UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

JULIA K.[1],

       Plaintiff,

   v.                                      23-CV-193 (JLS)

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## DECISION AND ORDER

Plaintiff Julia K. brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act, seeking review of the decision of the Commissioner of the Social Security Administration that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 6. The Commissioner responded and cross-moved for judgment on the pleadings, to which Plaintiff replied. Dkts. 13, 14. For the reasons below, the Court grants in part and denies in part Plaintiff's motion and denies the Commissioner's cross-motion.

---

[1] Pursuant to the Western District of New York's November 18, 2020 Standing Order regarding the naming of plaintiffs in Social Security decisions, this decision and order identifies Plaintiff by first name and last initial.

## PROCEDURAL HISTORY

This action originates from Plaintiff's application for Disability Insurance Benefits ("DIB") and her application for Supplemental Security Income ("SSI"), both filed on October 7, 2019.[2]  Tr. 368–77.[3]  Plaintiff's applications were initially denied, and she requested a hearing before an administrative law judge ("ALJ").  *Id.* at 201–02.  Following the hearing, at which Plaintiff was represented by counsel, ALJ William Weir issued a decision finding that Plaintiff was not disabled.  Tr. 13–24.  Plaintiff's request for Appeals Council review was denied, after which Plaintiff commenced this action.  Tr. 1–6; Dkt. 1.

## LEGAL STANDARDS

### I.  DISTRICT COURT REVIEW

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence and whether the correct legal standards were applied.  *See* 42 U.S.C. § 405(g); *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).  The Commissioner's factual findings are conclusive

---

[2] Plaintiff applied for both DIB and SSI.  To receive DIB, a claimant must show that he or she became disabled while meeting the Act's insured status requirements.  *See* 42 U.S.C. § 423(d)(1)(A); *Schillo v. Kijakazi*, 31 F.4th 64, 69–70 (2d Cir. 2022).  SSI, on the other hand, "provides benefits to each aged, blind, or disabled individual who does not have an eligible spouse and whose income and resources fall below a certain level."  *Clark v. Astrue*, 602 F.3d 140, 142 (2d Cir. 2010) (quoting 42 U.S.C. § 1382(a)) (internal quotation marks omitted).  The Social Security Administration uses the same five-step evaluation process to determine adult eligibility for both programs.  *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

[3] The filing at Dkt. 5 is the transcript of the proceedings before the Social Security Administration.  All references to Dkt. 5 are hereby denoted "Tr. __."

when supported by substantial evidence.  *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019).  "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).

The Court does not determine *de novo* whether the claimant is disabled, but the Commissioner's conclusions of law are not given the same deferential standard of review.  *See Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).  If there is a reasonable basis of doubt about whether the ALJ applied the correct legal standards, then upholding the determination "creates an unacceptable risk that a claimant will be deprived of the right to have his or her disability determination made according to correct legal principles." *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987); *see Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)) (the Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the . . . Act.").

## II.   DISABILITY DETERMINATION

Disability under the Act is determined under a five-step test.  *See Bowen v. City of New York*, 476 U.S. 467, 470–71 (1986); 20 C.F.R. §§ 404.1520, 416.920. First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  "Substantial gainful activity" is work activity that involves significant physical or mental

activities and is normally done for pay or profit.  20 C.F.R. §§ 404.1572, 416.972.  If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant cannot claim disability.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of impairments that significantly limits the claimant's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Absent such impairment, the claimant may not claim disability.  *Id.*

Third, the ALJ must determine whether the claimant meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If such criteria are met, then the claimant is declared disabled.  20 C.F.R. §§ 404.1520(d), 416.920(d).

Even if the claimant is not declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis.  The ALJ must determine the claimant's residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC is a holistic assessment of the claimant's medical impairments, both severe and non-severe, that evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments.  20 C.F.R. §§ 404.1545, 416.945.

In the fourth step, the ALJ must determine whether the claimant has the RFC to perform past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If the claimant is capable of performing past relevant work, then the claimant is not

4

disabled.  20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3).  If the ALJ finds that the claimant is unable to perform past relevant work, the analysis proceeds to the fifth and final step.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

In this final analytical step, the ALJ must decide whether the claimant is able to perform any other relevant work corresponding with his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1560(c), 416.960(c).  Here, the burden of proof shifts from the claimant to the Commissioner to prove that a significant number of jobs in the national economy exists that the claimant can perform given his or her RFC, age, education, and work experience.  20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c); *see Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

## DISCUSSION

## I.    THE ALJ'S DECISION

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 1, 2019.  Tr. 15.  The ALJ also found that Plaintiff suffered from the following severe impairments: lumbar degenerative disc disease; scoliosis; left knee ACL tear status post surgery; right ankle sprain; and obesity.  Tr. 16.  The ALJ concluded, however, that Plaintiff's severe impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 18.

5

After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) with the following limitations:

> [Plaintiff] requires [a] sit-stand option at will every 30 minutes (explained as the ability to get up from sitting every 30 minutes to perform some simple standing or walking to restock supplies or transmit papers or files), [Plaintiff] would not be able to perform complex work (defined as work involving multiple simultaneous goals or objectives or the need to independently set quantity, quality or method standards).

Tr. 18–19.

The ALJ found that Plaintiff was unable to perform any past relevant work. Tr. 22. But the ALJ concluded that Plaintiff was not disabled because her age, education, work experience, and RFC allowed her to perform jobs existing in significant numbers in the national economy as a document preparer, order clerk, and surveillance system monitor. Tr. 23. As such, according to the ALJ, Plaintiff had not been under a disability since March 1, 2019, her alleged onset date, through March 30, 2022, the date of his decision. Tr. 24.

## II.  PLAINTIFF'S ARGUMENTS

Plaintiff makes four arguments for judgment in her favor. *See* Dkt. 6, at 1. First, she argues that the ALJ did not meet his step-five burden of showing that significant jobs exist in the national economy in which she can perform. *Id.* at 12–18. More specifically, Plaintiff argues that the jobs which the vocational expert ("VE") testified to—a document preparer and a surveillance system monitor—are

obsolete. *Id.* Second, Plaintiff contends that the ALJ failed to evaluate the persuasiveness of the opinion from her chiropractor, Dr. Frank Esposito. *Id.* at 18–20. Third, Plaintiff asserts that the ALJ's sit/stand option is not supported by substantial evidence. *Id.* at 21–25. Fourth, Plaintiff argues that the ALJ failed to incorporate mild mental health limitations into the RFC. *Id.* at 26–27. As set forth below, remand is necessary because the ALJ failed to meet his step-five burden to prove that significant numbers of jobs in the national economy exist that Plaintiff can perform.

## III. ANALYSIS

### a. The ALJ failed to establish that significant jobs exist in the national economy that Plaintiff can perform.

A claimant is disabled unless work "exists in significant numbers in the national economy" that the claimant can perform. 20 C.F.R. § 404.1560(c)(2). "Within the Second Circuit, courts have refused to draw a bright line standard for the minimum number of jobs required to show that work exists in significant numbers, but courts have adopted a relatively low threshold number." *Harper v. Berryhill,* 2017 WL 3085806, at *15 (D. Conn. July 20, 2017). Here the ALJ found that Plaintiff was not disabled because she could perform the work of a document preparer, surveillance system operator, and order clerk. Tr. 23.

Several courts have recently determined that the job of a "document preparer" has been rendered obsolete by computers. *See, e.g., Zacharopoulos v. Saul,* 516 F. Supp. 3d 211, 223 (E.D.N.Y 2021) (collecting cases) ("This [c]ourt is not

the first to express dissatisfaction about the Commissioner's reliance on vocational expert testimony on plainly obsolete positions, including the microfilm document preparer position."); *Corey S. v. Comm'r of Soc. Sec.*, 2021 WL 2935917, at *10 (N.D.N.Y. July 13, 2021) (collecting cases) ("[A]n increasing number of courts have recognized the obsolete nature of the document preparer position and remanded for further administrative proceedings where there is no record evidence of other jobs existing in significant numbers that a plaintiff can perform."); *Kiiroja v. Comm'r of Soc. Sec.*, 525 F. Supp 3d 412, 413 (E.D.N.Y. Mar. 11, 2021) ("Once again, the Court finds that the [document preparer position] is obsolete, and again rejects the ALJ's unblinking acceptance of conclusory opinions by [the] vocational expert."); *Feuer v. Saul*, 2019 WL 9042872, at *1 (E.D.N.Y. Aug. 30, 2019), report and recommendation adopted, 2020 WL 1316528 (E.D.N.Y. Mar. 20, 2020) (noting that the VE's testimony that nearly 2.8 million individuals nationally are engaged in the document preparer position was highly troubling).

Although the VE testified that the job of a document preparer is currently "more of a digital scanner position[,]" this Court has no way to determine whether the number of digital scanner jobs equates to those of a document preparer under the Dictionary of Occupational Titles ("DOT"). Tr. 57; *see also Yanke v. Kijakazi*, 2021 WL 4441188, at *4 (E.D. Wisc. Sept. 28, 2021) ("Whether the ALJ relied on the [document preparer] DOT numbers . . . or on the VE's attempt to modernize the jobs with an amorphous [scanner] description, the ALJ's determination . . . is not supported by substantial evidence."). In support of the argument that the VE's

8

"testimony appropriately supplements the DOT[,]" the Commissioner cites to a case
that found the DOT definition of a document preparer "comically out of date." Dkt.
13-1, at 17, *Pamela H. v. Kijakazi*, 2021 WL 4307457, at *6 (N.D.N.Y. Sept. 22,
2021).  The court further noted that "[t]he definition for [a] document preparer
refers to preparing documents for microfilm, a lost art perhaps still practiced by a
few Luddites and anachronistic libraries." *Id.* (citing DICOT 249.587–018 (G.P.O.),
1991 WL 672349 (Jan. 1, 2016).[4]

The ALJ also found that Plaintiff could perform the work of an order clerk,
but, as Plaintiff notes, "the VE testified that there were only 2,800 surveillance
system [monitor] jobs, and 2,000 order clerk jobs in the national economy." Dkt. 6,
at 16.  That aggregate number is far less than what courts in this District have
found to be work that "exists in significant numbers in the national economy." *See
Jessica V. v. Comm'r of Soc. Sec.*, 2022 WL 737470, at *4–5 (W.D.N.Y. Mar. 11,
2022) (finding that 8,452 jobs nationally were insufficient to show that work exists
in significant numbers in the national economy); *Peach v. Berryhill,* 2018 WL
4140613, at *9 (W.D.N.Y. Aug. 30, 2018) (8,991 positions nationally did not qualify

---

[4] Recent VE testimony in another case supports the conclusion that the jobs of
a document preparer and surveillance system monitor are "obsolete." *Jaret B. v.
Comm'r of Soc. Sec.*, 2024 WL 1014052, at *5 (W.D.N.Y. Mar. 8, 2024) ("The ALJ
even offered two jobs of his own (surveillance system monitor and document
preparer), to which the VE testified that the jobs were obsolete and no longer
existed.").  Indeed, the reliability of the job descriptions of a document preparer and
surveillance system monitor were called into question as early as 2010. *See
Cunningham v. Astrue,* 360 F. App'x 606, 615 (6th Cir. 2010) (finding that the
positions of document preparer and surveillance system monitor "appear obsolete"
and directing remand).

as a significant number of jobs).  Remand is necessary because the ALJ failed to meet his burden at step-five to prove that work exists in significant numbers that Plaintiff can perform.

### b. The ALJ's sit/stand option is supported by substantial evidence.

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo*, 31 F.4th at 78.  But the RFC need not correspond perfectly with "any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order).  What is more, just because an ALJ includes a limitation with a percentage, range, or other descriptor in the RFC, this does not mean that the limitation is unsupported by substantial evidence.  *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) ("The fact that the ALJ assigned a particular percentage range (0-10%) to illustrate [plaintiff's] limitation does not undermine the fact that the ALJ's finding was supported by substantial evidence.").  The question then becomes whether the ALJ's sit/stand limitation was supported by substantial evidence.

If an ALJ includes a "highly specific" limitation in the claimant's RFC, that limitation cannot come from whole cloth.  *See Tomicki v. Berryhill*, 2018 WL 703118, at *5 (W.D.N.Y. Jan. 15, 2018).  In other words, the ALJ cannot arrive at specific limitations that do not appear anywhere in the medical record.  *See Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998).  "A medical opinion, a claimant's

testimony, or information contained in the medical records can oftentimes be sufficient to support a given duration." *Michelle D. v. Comm'r of Soc. Sec.*, 2024 WL 108685, at *5 (W.D.N.Y. Jan. 10, 2024).

The ALJ found that Plaintiff "requires a sit-stand option at will every 30 minutes (explained as the ability to get up from sitting every 30 minutes to perform some simple standing or walking to restock supplies or transmit papers or files)." Tr. 19. At the administrative hearing, in response to how long she could sit, Plaintiff testified that she could sit for "maybe [thirty] minutes." Tr. 38. Aside from incorporating this limitation into the RFC, the ALJ only mentioned Plaintiff's ability to sit in finding Dr. John Schwab's opinion to be "somewhat persuasive," noting that "his conclusions that [Plaintiff] could sit for the entirety" of an eight-hour workday to be inconsistent with Plaintiff's reduced lumbar range of motion as well as her subjective complaints. *Id.* at 22, 1029.

The Court must "defer to the Commissioner's resolution of conflicting evidence" and reject the ALJ's findings "only if a reasonable factfinder would have to conclude otherwise." *Morris v. Berryhill*, 721 F. App'x 25, 29 (2d Cir. 2018) (internal citations and quotations omitted); *Krull v. Colvin*, 669 F. App'x 31 (2d Cir. 2016) (the deferential standard of review prevents a court from reweighing evidence).

At the hearing, the ALJ posed the following hypothetical to the VE:

> [Plaintiff] would need a sit/stand option at will, which I define as every half hour. So moving from sitting, standing, to walking every half hour, although remaining on task or at a station. [Plaintiff] would be able to leave [the] workstation to restock

11

> supplies or transmit paperwork, files, that kind of thing.
> [Plaintiff] would not be able to perform complex work, which I
> define as work involving multiple, simultaneous goals or
> objectives, or the need to independently set quality, quantity, or
> method standards. If we have those limits, it looks like the light
> work, the cashier II work is out. Are there other jobs such a
> person could perform, and if so, can you give me two examples
> with national numbers, please?

Tr. 56.

After several follow up questions from the VE, the ALJ clarified that Plaintiff

"wouldn't have to then go walk for [thirty] minutes, but every [thirty] minutes,

[Plaintiff] would have to get up from sitting . . . [and Plaintiff] could then . . . go

walk for five minutes or . . . deliver a book or a file and then come back to sitting

and do . . . that continuously." *Id.* at 57. "If the factors set forth in the hypothetical

are supported by substantial evidence, then the [VE]'s testimony may be relied on

by the ALJ in support of a finding of no disability." *Pardee v. Astrue,* 631 F.

Supp.2d 200, 222 (N.D.N.Y. 2009) (citing *Varley v. Sec'y of Health & Human Servs.,*

820 F.2d 777, 779 (6th Cir. 1987)).

    The hypothetical question posed to the VE is supported by Plaintiff's own

testimony that she could sit for thirty minutes, and thus, is not grounds for remand.

*Lesanti v. Comm'r of Soc. Sec.,* 436 F. Supp.3d 639, 649 (W.D.N.Y. 2020) ("It

appears the ALJ credited [p]laintiff's testimony that she could not focus and was

easily distracted, and assessed a more generous limitation of 5% off-task time

limitation in the RFC assessment is not grounds for remand.") (internal citation

omitted); *Cichocki v. Astrue,* 729 F.3d 172, 178 n.3 (2d Cir. 2013) ("ALJ need not

recite every piece of evidence that contributed to the decision, so long as the record

'permits us to glean the rationale of the ALJ's decision.'"); *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112–13 (2d Cir. Mar. 25, 2010) (no error in crediting claimant's testimony).

> ### c. Because chiropractors are not considered acceptable medical opinions, the ALJ was not required to articulate how he considered this opinion using the regulatory factors.

Under 20 C.F.R. § 404.1520c, the ALJ must articulate how he or she considered certain factors in assessing medical opinions and prior administrative findings. *See* 20 C.F.R. § 404.1520c(a)-(c). The regulatory factors are: (1) supportability, (2) consistency, (3) relationship with the claimant (which has five sub-factors of its own to consider), (4) specialization, (5) other factors. *Id.* § 404.1520c(c). An ALJ must explain his or her approach with respect to the first two factors when considering a medical opinion, but need not expound on the remaining three. *Id.* § 404.1520c(b). The ALJ is tasked with analyzing medical opinions at the source-level, meaning that the ALJ need not discuss each and every medical opinion in the record, and may apply the factors holistically to a single medical source. *Id.* § 404.1520c(b)(1). These rules do not apply to the ALJ's analysis or consideration of nonmedical sources. *Id.* § 404.1520c(d).

"Although not mentioned by the ALJ, chiropractors are not acceptable medical sources." *Jennifer M. v. Comm'r of Soc. Sec.*, 2022 WL 19003388, at *6 n.4 (citing *Patricia S. v. Kijakazi,* 2022 WL 819561, at *3 (D. Conn. Mar. 18, 2022); *see also Luis B. v. Comm'r of Soc. Sec.*, 2022 WL 268820, at *7 (W.D.N.Y. Jan. 28, 2022)

("[A] chiropractor . . . [is] not an acceptable medical source" even if he or she is a treating source.). "Although 'under the new regulations, all medical sources, not just 'acceptable' medical sources, can provide evidence that will be considered medical opinions', the ALJ is not required to give controlling weight to such an opinion, and he can properly discount it if his conclusion is supported by substantial evidence." *Patricia S.*, 2022 WL 819561, at *3 (citing *Mark B. v. Comm'r of Soc. Sec.*, 2022 WL 137718, at *5 (N.D.N.Y. Jan. 14, 2022). Even under the prior regulations, "other sources" such as a chiropractor, "cannot establish the existence of a medically determinable impairment . . . [but] may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Wood v. Comm'r of Soc. Sec.*, 2019 WL 4059017, at *5 (W.D.N.Y. Aug. 28, 2019) (citing SSR 06-03p, 2006 WL 2329939, at *2). Because chiropractors are not acceptable medical sources, the ALJ was not required to assess the persuasiveness of Dr. Esposito's opinion under the regulatory factors discussed above.

### d. The ALJ properly accounted for Plaintiff's mild limitations.

The ALJ's mild limitations in Plaintiff's mental functioning are consistent with an RFC limiting her to unskilled work. *See McIntyre v. Colvin,* 758 F.3d 146, 150–51 (2d Cir. 2014) (moderate limitation in maintaining concentration, persistence, or pace in relating with others did not preclude unskilled work); *Zabala v. Astrue,* 595 F.3d 402, 409 (2d Cir. 2010) (affirming a finding of unskilled work where the evidence showed moderate or less severe limitations in her work-related functioning); *Calabrese v. Astrue,* 358 F. App'x 274, 277 (2d Cir. 2009) (moderate

14

limitations in different work-related areas did not preclude unskilled work). Here, the ALJ found that Plaintiff "would not be able to perform complex work (defined as work involving multiple, simultaneous goals or objectives or the need to independently set quantity, quality, or method standards)." Tr. 19.

Plaintiff cites to no opinion evidence indicating that she is incapable of performing unskilled work. Plaintiff cannot merely disagree with the ALJ's weighing of the evidence or argue that evidence in the record could support his position. Plaintiff must show that no reasonable factfinder could have reached the ALJ's conclusions based on the evidence in the record. *See Brault v. Soc. Sec. Admin. Comm'r,* 683 F.3d 443, 448 (2d Cir. 2012). Ultimately, it is Plaintiff's burden to prove a more restrictive RFC than the RFC assessed by the ALJ, and Plaintiff fails to do so here. *See Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018).

## CONCLUSION

For the reasons stated above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's motion for judgment on the pleadings (Dkt. 6) and **DENIES** the Commissioner's cross-motion for judgment on the pleadings (Dkt. 13).  The decision of the Commissioner is **VACATED**, and the matter is **REMANDED** for further administrative proceedings consistent with this decision.


SO ORDERED.


Dated:        August 9, 2024
              Buffalo, New York

                              _____
                              JOHN L. SINATRA, JR.
                              UNITED STATES DISTRICT JUDGE